# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
 2

 3
       UNITED STATES OF AMERICA,          )
 4                                        )
                      Plaintiff,          )
 5                                        )
       vs.                                )Case No: 20-MJ-1094-MDM
 6                                        )
       KEVIN DION ROLLE, JR.,             )
 7                                        )
                      Defendant.          )
 8

 9     _____

10
                 TRANSCRIPT OF INITIAL APPEARANCE HEARING
11                             HELD BEFORE
          THE HONORABLE MAGISTRATE JUDGE MARSHAL D. MORGAN
12                     Friday, October 30, 2020
       _____
13
                     A P P E A R A N C E S
14

15     For the Plaintiff:

16         MARIA MONTANEZ, AUSA

17
       For the Defendant:
18
           JESUS HERNANDEZ, AFPD
19

20

21

22

23

24

25
```

```
1              (PROCEEDINGS COMMENCED AT 3:34 P.M.)

2

3              DEPUTY CLERK:  Magistrate Case 20-1094, United

4    States of America versus Kevin Dion Rolle, Junior.  Case

5    called for initial appearance.  On behalf of the United

6    States, AUSA Maria Montanez.  On behalf of the defendant,

7    AFPD Jesus Hernandez.  Also present, Probation Officers

8    Damary Flores and Alisa Abruna.  The defendant does not

9    require the services of the certified interpreter.  All

10   parties are present via VTC.

11             THE COURT:  All right.  Good afternoon, everybody.

12             MS. MONTANEZ:  Good afternoon, Your Honor.

13             THE COURT:  Okay.  Maria, Ms. Montanez, the

14   Government is ready to proceed, right?

15             MS. MONTANEZ:  Yes, Your Honor, we are.

16             THE COURT:  Mr. Hernandez, Defense ready to

17   proceed?

18             MR. HERNANDEZ:  Yes, Your Honor.

19             THE COURT:  All right.  So good afternoon,

20   everybody.  In addition to those individuals that the

21   courtroom deputy mentioned who are appearing by way of video

22   conference, we also have the court reporter appearing by

23   video conference, and the Court is audio recording these

24   proceedings.

25             The Court noticed this hearing as a video
```

1    conference hearing under the authority granted by the

2    Court's March 31, 2020 administrative order as amended in

3    Miscellaneous Case Number 20-88.

4            Mr. Hernandez, did you have an opportunity to

5    discuss with Mr. Rolle -- is that how you pronounce it,

6    Rolle -- about his right to be physically present for this

7    hearing?

8            MR. HERNANDEZ:  Yes, Your Honor.

9            THE COURT:  Okay.  Mr. Rolle, as you know,

10   Coronavirus and COVID-19 has made it unsafe for us to bring

11   people to the courtroom for these hearings.  As a result,

12   the Court has authorized us to proceed with this hearing by

13   way of video conference, but to do so we would also need

14   your consent.  Your consent is not required, however.  You

15   can insist that we bring you physically to the courtroom to

16   hold this hearing.  However, what I would do is postpone the

17   hearing today and reschedule it for some future date when it

18   is safe to bring you to the courtroom.  As you can imagine,

19   it could be weeks or months in the future.  As a result, the

20   only way to timely proceed with this hearing is to conduct

21   it via video teleconference.

22           Please understand that you will not lose your

23   ability to speak with your attorney at any point during the

24   hearing.  Let me know, and I will pause the hearing and

25   Mr. Hernandez can call you on the phone and you can speak

1    with him.

2              Having heard that, do you consent to proceed with

3    this hearing by way of video conference?

4              THE DEFENDANT:  Yes, Your Honor.  I am actually in

5    a wheelchair, so it would be actually convenient for me to

6    have the hearing by video conference.

7              THE COURT:  Okay.  Terrific.  And I understand

8    that English is your first language, so you don't need an

9    interpreter.  Right?

10              THE DEFENDANT:  Correct, Your Honor.

11              THE COURT:  Okay.  Very good then.  I find that

12    the defendant, after conferring with Counsel, has knowingly

13    and voluntarily consented to proceed by way of video

14    conference with this initial appearance and has, therefore,

15    waived his right to appear in person for the hearing.

16              So Mr. Rolle, you are before me because a criminal

17    complaint has been filed against you in the Southern

18    District of New York charging you with several violations of

19    federal law.  More specifically, Count One of the complaint

20    in the County of Manhattan charges you with conspiracy to

21    commit wire fraud.

22              Let me just ask Mr. Hernandez.  Have you had an

23    opportunity to go through the specific allegations with him?

24              MR. HERNANDEZ:  Yes, I did, Your Honor.

25              THE COURT:  Okay.  So I don't need to go over the

1    specific allegations with him, but I will go over with him

2    the maximum penalties.  Thank you.

3         So Mr. Rolle, the first count charges you with

4    conspiracy to commit wire fraud in violation of Title 18

5    United States Code Section 1349.  If you are convicted of

6    that offense, you would face a maximum term of

7    incarceration -- a maximum possible term of incarceration of

8    not more than 20 years, a fine of not more than $250,000,

9    and a supervised release term of not more than three years.

10        Now, I see you roll your eyes in surprise.  Please

11   understand that these are the maximum penalties provided by

12   law.  It does not necessarily equate with what you would be

13   sentenced to if you were convicted of this offense, okay.

14   So don't be terribly alarmed by it.  This is just the

15   maximum penalty by law, okay.

16        Count Two charges you with wire fraud, and it

17   provides statutorily with the same maximum penalty; no more

18   than 20 years, a fine of not more than $250,000, and a

19   supervised release term of not more than three years.

20        Now, Count Three charges you with aggravated

21   identity theft, which is in violation of Title 18 United

22   States Code Sections 1028A(a)(1), (b), and separately

23   18 U.S.C. Section 2, which is aiding and abetting.  If you

24   are convicted of this offense, the law provides for a fixed

25   sentence of two years imprisonment -- and the important

1    thing about the two years is that it must be consecutive to

2    any other term of incarceration for which you are

3    sentenced -- a maximum penalty of $250,000, and a supervised

4    release term of not more than one year per count of 1028A.

5          Count Four charges you with forgery or false use

6    of a passport in violation of Title 18 United States Code

7    Sections 1543 and Section 2.  It provides you with a maximum

8    possible term of incarceration of not more than ten years, a

9    fine of not more than $250,000, and a supervised release

10   term of not more than three years.  The complaint is rather

11   extensive, and that's it.  I don't see any forfeiture

12   allegation or anything else in the complaint.

13         Now, I understand you are not a U.S. citizen.  I

14   don't want you to answer that question at all.  I just

15   understand that you are not.  Therefore, let me tell you, I

16   understand you are a citizen of the Bahamas.  So if you

17   would like for me to order the agents to notify the consular

18   office of the Bahamas, I can do so, if you want.  Consular

19   notification might help you communicate with your family

20   that you are detained.  It might assist you in obtaining

21   representation, and there might be some other benefits of

22   consular notification.  If you tell me no today, fine;

23   tomorrow you can change your mind and we can make the

24   consular notification.  But it's up to you.  If you would

25   like for me to do that, I will order the agents -- I will

1   order the Assistant United States Attorney to contact the

2   agents to have the notification done.

3           Would you like for me to have them notify the

4   Bahamian consular office?

5           THE DEFENDANT:  No, thank you, Your Honor.  I have

6   very little ties to the Bahamas.  New York is where I am

7   based out of now; so is my family.  So that's not necessary.

8           THE COURT:  Okay.  Very well.  Let me advise you

9   that you have the right to retain counsel of your own

10  choosing, and if you cannot afford an attorney, one will be

11  appointed for you at no charge to you.

12          Now, I understand in my discussions with the

13  probation officer that you do not have the financial

14  resources necessary to hire the services of your own

15  attorney and, therefore, the Court will appoint CJA counsel

16  to represent you in this case.

17          Counsel Hernandez, I am going to appoint CJA

18  counsel only to lighten the load from the FPD since the FPD

19  has been appointed every case so far.

20          Mr. Rolle, CJA counsel is simply a court-appointed

21  attorney who will represent you in this case.

22          You have the right to remain silent.  Anything

23  that you say during this virtual -- in this virtual

24  courtroom or outside of this virtual courtroom can be used

25  against you.  You also have the right to a jury trial

1    presided over by a district judge.

2              Now, because you were charged by way of a criminal

3    complaint in the Southern District of New York, you have the

4    right to a preliminary hearing.  A preliminary hearing --

5    I'm sorry, strike that.

6              Because you were charged by way of a criminal

7    complaint, the U.S. Attorney's Office has 30 days from the

8    date of your arrest to present this case to the grand jury.

9    If the grand jury finds that there is probable cause that

10   you have committed a crime, it will return what is called an

11   indictment.  An indictment is a finding of probable cause.

12             Separate from the grand jury, you also are

13   entitled to a preliminary hearing.  A preliminary hearing is

14   so that the Court, namely me, or the magistrate judge in

15   New York can make a determination as to whether there is

16   probable cause for your arrest.  During the preliminary

17   hearing, the Government will be called upon to present

18   witnesses in an effort to prove to the Court or convince the

19   Court that there is probable cause that you violated the

20   law.  During that preliminary hearing, the Government will

21   be called upon to present witnesses, and you can

22   cross-examine those witnesses or present witnesses of your

23   own in an effort to attack probable cause.

24             Now, if the grand jury returns an indictment prior

25   to the scheduled date for your preliminary hearing, well,

1    then you will no longer need the preliminary hearing because

2    the return of the indictment is the finding of probable

3    cause, in which case your preliminary hearing will be

4    converted to what's called an arraignment.  An arraignment

5    is simply the formal reading of the charges returned by the

6    grand jury.

7           Now, in this case -- you are from New York.  The

8    30 days that I mentioned to you will not necessarily count

9    until you reach or return back to the Southern District of

10   New York.  So don't start counting the 30 days necessarily

11   from the day of your arrest.

12          The next hearing for you in this case will be

13   what's known as an identity, removal and potentially a bail

14   hearing.  The identity, removal and bail hearing will be

15   scheduled or is scheduled for what day, Lotty, considering

16   it is now a ten-dayer?

17          DEPUTY CLERK:  November 12th at 3:00 p.m.

18          THE COURT:  All right.  What I would like to do

19   now before I adjourn this is I want to have a sidebar with

20   the attorneys and the court reporter.  So let me -- Lotty,

21   do me a favor and create a breakout room.

22          Mr. Rolle, I am going to have a conference with

23   the attorneys now, so you are going to see us disappear

24   because I am going to move us to a breakout room.  You just

25   sit tight there and wait for us to come back.  It's the

1    equivalent of us having a conference at the bench, out of

2    the ears of the public, okay.  So sit tight, and we will be

3    right back with you.

4             DEPUTY CLERK:  Judge, it will be you, the

5    attorneys, and Lisa?

6             THE COURT:  Everybody with the exception of

7    Mr. Rolle.

8             DEPUTY CLERK:  Can I just put Mr. Rolle in the

9    waiting room so that he won't listen to what everybody is

10   talking about here?

11            THE COURT:  If that's easier, let's do it that

12   way.

13            DEPUTY CLERK:  Okay.  Give me a second.

14            THE COURT:  Mr. Rolle, we are going to put you in

15   the waiting room.  Just sit tight, okay.

16            (WHEREUPON, the Defendant left the proceedings.)

17            THE COURT:  So for purposes of the record,

18   Mr. Rolle has been placed into the waiting room, and we now

19   have the court reporter, and Mr. Hernandez, counsel for

20   Mr. Rolle, Ms. Montanez, counsel for the Government,

21   Ms. Abruna and Ms. Flores, both from Probation, and Lotty,

22   the courtroom deputy.

23            All right.  Earlier I had mentioned to both the

24   Government and the Defense in a recess from another hearing

25   that Probation was potentially recommending conditions of

1    release.  Since I mentioned that, and since my meeting with

2    Probation, Probation has uncovered some additional

3    information that goes directly to the question of

4    substantial risk of flight.  But the circumstances, the

5    medical situation that Mr. Rolle finds him in puts the Court

6    in a quandary as to how we should proceed with the question

7    of bail.

8             What I want to have happen now is, Ms. Abruna,

9    probation officer, explain to both parties and give, in

10   effect, an oral report, an oral Pretrial Services Report, so

11   that we can together, among all of us, decide how to proceed

12   in this case.

13            PROBATION OFFICER ABRUNA:  Yes, Your Honor.

14            THE COURT:  I haven't had a hearing yet, a bail

15   hearing but, in effect, it turns out -- and I don't want to

16   take any wind out of Ms. Abruna's sail.  It turns out that

17   he is not a three-day defendant but, rather, a ten-dayer.

18   But having said that, I will let her explain the

19   circumstances.  Go ahead.

20            PROBATION OFFICER ABRUNA:  Yes, Your Honor.  Thank

21   you.  Well, the original interview was performed by

22   Probation Officer Damary Flores.  She is here, and if she

23   needs to interrupt me or add on to the information, that

24   would be completely acceptable since she was the one to

25   receive the initial information from the defendant.

1        She portrayed to me or conveyed that the defendant

2   is a resident of New York.  She reported to me that the

3   defendant is a single father of four children, that his

4   children currently reside with his own mother in New York

5   because the defendant became a widow recently.  I believe it

6   was in January.  And --

7        THE COURT:  Let me clarify one point.  Damary, I

8   think that he lives with his mother here, and she just

9   recently, in the past days since his arrest, went back to

10  New York -- that doesn't make any sense -- went back to

11  New York to take care of his children.  That doesn't make

12  any sense.

13        PROBATION OFFICER FLORES:  Well, Your Honor, what

14  she told me was that after she heard about the arrest, she

15  flew back to New York to take care of the grandchildren but,

16  actually, that she is now living between the Bahamas and

17  New York because of the physical conditions of her son and

18  because she is helping him taking care of the children.

19        THE COURT:  Okay.  So she went back to New York to

20  take care of the grandchildren.  But with whom do his four

21  children live?  He has triplets, who are four years old, and

22  a three-year-old.  With whom did they live prior to his

23  arrest?

24        PROBATION OFFICER FLORES:  Well, Your Honor, he

25  was married to -- apparently, married to Elena Cavendish,

1    age 27, a Canadian resident residing in New York.  They were

2    together for almost two years, and she died in a car

3    accident recently.

4              THE COURT:  Oh, recently; not January?

5              PROBATION OFFICER FLORES:  January.  Yes.

6              THE COURT:  Okay.  January.  So did he live in

7    New York with her and the children?

8              PROBATION OFFICER FLORES:  Yes.

9              THE COURT:  When did he come to Puerto Rico?

10             PROBATION OFFICER FLORES:  Actually, he

11   doesn't -- he just told me that he was in the airport, and

12   he was waiting to board the other flight.  Maybe -- what I

13   understood is he was in a connecting flight here in Puerto

14   Rico, but never mentioned what he was doing here other than

15   being at the airport.

16             THE COURT:  I see.  I see.  Okay.  He is charged

17   in the complaint in New York because that's where he was

18   residing until his arrest here.  So he's got no contacts

19   with Puerto Rico.  But his mother, where is his mother from

20   and live?  I know she is from the Bahamas, but does she live

21   here?

22             PROBATION OFFICER FLORES:  No.

23             PROBATION OFFICER ABRUNA:  No, Your Honor.  U.S.

24   Probation Officer Alisa Abruna, for the record.  His mother

25   is in New York with his children.  We believe that she

14

1   resides both in the Bahamas and stays with him in New York

2   on and off, but she claims to be a citizen of the United

3   States.  That information could not be verified as to her

4   own citizenship because when we contacted her for purposes

5   of verifying her information in further consideration of

6   possible third-party custodian, her response was that her

7   son is an adult and he can provide us her information.

8        I attempted to verify further information

9   regarding the defendant's citizenship because she had

10  portrayed to Officer Flores that her son was a citizen, and

11  so since this detail -- I tried to contact the immigration

12  authorities with no luck.  So I contacted her and asked her

13  if she had any documents or any documented basis to

14  establish his citizenship, to which she replied that she

15  doesn't know everything that her son does, but that all she

16  knows is that he had some papers that he had submitted for

17  citizenship, implying an application, and that he was

18  waiting for a second set of papers, and that that was

19  pending completion, but that the defendant had permission to

20  be in the United States until 2021.

21       I asked her if she knew what a visa document is,

22  and she said, Yes, of course, I do.  So I asked her if she

23  believes that what he has is a visa to be in the United

24  States until 2021, to which she replied that, well, it could

25  be understood that it is a visa, but she doesn't know all

1    the details as to her son's papers or doings, along that

2    line.

3              So she inquired this officer if we could just

4    simply let her know what were the charges against her son

5    and -- because she didn't understand why she had to provide

6    information of him or herself to us, meaning the Probation

7    Office.  And I told her the purpose of our investigation.

8    And the conversation just ended there.  Nothing further was

9    discussed; not on my behalf.  I don't know if Officer Flores

10   has any further information.

11             THE COURT:  Okay, listen.  Now, I don't want this

12   to be the detention hearing.  I just want this to be the

13   equivalent of the parties reviewing the paper.  So let me

14   run through what Damary told me about his medical condition,

15   and then I want to go back on the record with the defendant

16   where we can then discuss any issue that you want to

17   discuss.  Maria, on behalf of the United States, you can

18   then raise any argument in favor of detention or, if you

19   find it reasonable, some conditions.  Mr. Hernandez can do

20   the same.

21             You know, I am trying to duplicate a scenario

22   where the parties are simply reviewing the paper outside of

23   the presence of the defendant.  I didn't want to bring him

24   into this sidebar because I didn't want him to feel the

25   temptation of explaining things or justifying anything or,

1    basically, putting his foot in his mouth unintentionally.

2             So I am going to go through the medical

3    conditions.  Damary can correct me if I am wrong; she can

4    add to it.  And then we will go back and be with the

5    defendant.  And Mr. Hernandez, if you feel it necessary or

6    appropriate to speak with him, let him know what was said

7    over here, we can do that as well.

8             Goodness, it's 4:00, Lotty.  I feel terrible for

9    Feldstein.  Can you contact Feldstein?

10            DEPUTY CLERK:  I texted him just to make sure that

11   he knows that we haven't finished, that we went to sidebar,

12   but he knows.

13            THE COURT:  All right.  Apologize to him for me.

14   I didn't mean for this to extend so long.  Let's see if we

15   can't get through this, Guys.

16            All right.  He has ████████████.  I don't know,

17   Damary, what the ██████ is of.  Do you?

18            PROBATION OFFICER FLORES:  Your Honor, he just

19   told me that he has █████ in his abdominal area, in the

20   stomach.

21            THE COURT:  In his abdominal area.  He suffers

22   from ██████████   He is ███████.  I think he suffers

23   from a █████.  Currently the meals at MDC are making him sick

24   because of his health conditions.  I think he is also now

25   going through ███████████.  He suffers from ███████.  He

1    takes nine pills a day.

2              He is a legal permanent resident of the United

3    States, but he is a citizen of the Bahamas.  He works for

4    the Government of the Bahamas at a college that has a campus

5    in Miami and in the Bahamas.

6              PROBATION OFFICER FLORES:  Excuse me, Your Honor.

7    When I asked him about his legal status, he just told me

8    that he was a U.S. citizen, not --

9              THE COURT:  That's where the quandary comes in,

10   because he represented that he was a U.S. citizen, and when

11   Probation attempted to confirm that, they were unable to

12   confirm it definitively.  And, actually, the mother was

13   reticent to give up information, but the information that

14   she did give up led us to believe that he might be here on a

15   visa alone.

16             He has a delicate mental state.  He has been a

17   psychiatric patient since the age of 14.  He was

18   hospitalized in 2018 due to, apparently, some sort of a

19   breakdown.  He currently takes ██████████████, and he works

20   from home since his ██████ diagnosis in January of 2020.

21   And what I was saying before is that he works for a college

22   that has a campus in both Miami and the Bahamas.  All right.

23   So that's the extent of what Probation has been able to

24   uncover so far.

25             Lotty, can we proceed still with this even though

1    it's after 4:00?

2              DEPUTY CLERK:  I will call Feldstein.

3              THE COURT:  All right.  Please do that.

4              Mr. Hernandez, would you like to speak to him?

5              MR. HERNANDEZ:  Yes, briefly.  If you could give

6    me a breakout room, that would be great.

7              MS. MONTANEZ:  I apologize, Your Honor.  I didn't

8    understand Counsel Hernandez.  Are we moving from the break

9    room or still in the break room?

10             THE COURT:  We are in the breakout room.  Lotty is

11   finding out from Mr. Feldstein if we can proceed because,

12   technically, 4:00 o'clock is the count, and we shouldn't

13   have hearings beyond 4:00, but that's my fault.  I didn't

14   catch it.  It's already 4:00 o'clock.  I don't know what the

15   Government's position is ultimately going to be with respect

16   to everything that we talked about, but I think it's

17   something that we need to discuss with the defendant

18   present.  So Lotty.

19             DEPUTY CLERK:  Feldstein did not answer, Judge.

20             THE COURT:  We have to continue in any event.  So

21   let's bring Mr. Rolle back and have Mr. Hernandez contact

22   him.  And I don't know how.

23             (WHEREUPON, the Defendant entered the

24             proceedings.)

25             THE COURT:  Mr. Rolle, how are you?

```
1              Okay.  Is Mr. Feldstein around?  No, he is not?

2              You know what, we can do it this way.  We don't

3      need a telephone.  Let's put Mr. Hernandez and Mr. Rolle in

4      a breakout room.  We don't need an interpreter.  He doesn't

5      need to call on the phone.

6              Okay.  Mr. Rolle, I am going to have your

7      attorney, Mr. Hernandez, talk with you in a breakout room,

8      all right.  So you are going to leave us virtually and enter

9      a room with Mr. Hernandez.  However, on the screen, it is

10     going to invite you to go to the breakout room.  You are

11     going to have to accept the invitation to go to the

12     breakout room.  Right, you can't touch the screen.  He did

13     tell you -- I heard him -- not to touch it.

14             Mr. Feldstein, hello.  I need to send Mr. Rolle to

15     a breakout room.  Okay.

16             (WHEREUPON, there was a conference between the

17             Defendant and Counsel.)

18             MR. HERNANDEZ:  We are ready to proceed, Your

19     Honor.

20             THE COURT:  We are back on the record.  Mr. Rolle

21     has rejoined us, as has Mr. Hernandez, where they were -- we

22     were in a brief recess while they spoke privately.

23             Let me ask the Government what its position is

24     with respect to bail.

25             MS. MONTANEZ:  Your Honor, we are requesting the
```

1    detention of the defendant.  We were actually going to

2    request the three days, but if the Court is inclined to move

3    with the hearing today, we are prepared to move forward with

4    our arguments as well.  Do you want me to do that now?

5              THE COURT:  Yeah, I would.

6              MS. MONTANEZ:  That's okay.  We are prepared, Your

7    Honor.

8              First of all, as per the information the

9    Government has, the defendant is not a United States citizen

10   and he is not a legal permanent resident either.  The

11   information the Government has is that his mother is not a

12   U.S. citizen either.  She is a citizen of the Bahamas.  We

13   do not have any information regarding the children he is

14   claiming to have, but we do have information that the

15   defendant has a pattern of traveling constantly to multiple

16   jurisdictions, including international jurisdictions.

17             To summarize -- and I am going to go into detail,

18   but to summarize all this information, we are skeptical of

19   the information the defendant has provided absent any other

20   documentation in support of it, honestly, including some of

21   the medical conditions he has claimed he has or at least he

22   alleged he had to the probation officer.

23             For example, the probation officer is informing he

24   takes nine pills a day.  Some medications were seized from

25   the defendant at the time he was arrested; two pills -- two

1   pill bottles.  And those, it seems, based on the internet,

2   that they are for ██████████████   So we might agree that

3   those might go to the ██████████████   But we have no

4   information regarding any treatment for ███████ by the

5   defendant.  To the contrary, what we have is the defendant

6   flying around internationally for a long period of time.

7           This case is based on a fraud scheme that began on

8   or around 2015.  The defendant during this time has been

9   submitting false information to officials.  He has been

10  submitting false information to financial institutions, and

11  he has gained access to false documents, more than six or

12  seven identity documents and personal identifying

13  information this defendant has gathered in order to present

14  those documents to officials in the financial institution

15  and then access credit cards which he has used for expensive

16  buys.  The loss right now, it's more than $1 million.

17          Among the type of documentation, the defendant has

18  had access to Ecuadorian passports, false Pennsylvania

19  drivers license, a British passport.  Not only he acquires

20  the false documentation; he also uses additional aliases.

21  We have at least one, two, three, four, five aliases the

22  defendant has been using to conduct these buys or to obtain

23  these documents.  We have Ecuadorian passports, British

24  passports.  There is a link in terms of the purchase history

25  from this defendant to a German name of Christian Alexander

1    Hill.  There is also a link to Dario Pelaez with Spanish

2    identity documents.  Those were used to gather additional

3    credit cards; as well as French identity documents, Your

4    Honor.

5         Besides that, the defendant recently returned to

6    the United States after several weeks traveling abroad, and

7    he traveled to multiple European cities, including Madrid,

8    London, Vienna, Budapest, Turkey, and Poland.  And that was

9    all before arriving to the United States and in Puerto Rico.

10   And it is also important to say that he was boarding a plane

11   to go to Miami at the time of his arrest on Wednesday.

12        We are unaware of any family ties the defendant

13   might have had in the United States.  We are definitely

14   concerned that if this defendant is released, he will flee

15   immediately to the Bahamas.  There is no doubt he has access

16   to -- in terms of money, to escape.  He also has access to

17   these personal identifying information, to the passports.

18   We don't know why he was in possession of a British

19   passport, but the fact is that he has.

20        Besides that, this investigation has revealed

21   searches in terms of the search database this defendant has

22   been engaging to, and that revealed that the defendant has

23   searched on the internet for different topics; among them,

24   how to get passports from other countries, how to get birth

25   certificates from other countries and drivers licenses,

1    how-to videos for purchasing and making false identification

2    documents.

3          We are skeptical of the information this defendant

4    is providing to the probation officer's report.  We submit,

5    respectfully, that the fact that the mother is also

6    providing information that is not consistent with the

7    information that she reveals later on, even in the same

8    interview with the probation officer -- she claimed to the

9    probation officer one thing at the beginning and then later

10   on she kind of retracted.  We understand that that also

11   indicates that the information submitted by the defendant is

12   not accurate, to say the least.

13          Even if the medical conditions the defendant says

14   he has are true, those medical conditions at no point have

15   stopped the defendant from traveling extensively outside of

16   the United States.  Defendant claims that he is working from

17   home, notwithstanding that he's been traveling

18   internationally extensively and outside of the United

19   States, which is a significant risk of flight factor.  And

20   at this time, Your Honor, we are seriously concerned with

21   the risk of flight the defendant possesses, the fact that he

22   has access to this information, he has access to these

23   documents, and he has access to money based on the kinds of

24   expenses this defendant has made with those credit cards.

25   From on or about September 7, 2020 to on or about

1    October 2020, meaning that was recent, is when the defendant

2    has been traveling through Europe.  Therefore, he has an

3    ability to go physically and financially flee the

4    jurisdiction.  This is also in accordance with the travel

5    patterns that he has had since 2015 and with the access to

6    personal identifying information that he has, Your Honor.

7    Therefore, we are requesting detention.

8               THE COURT:  Thank you.  Mr. Hernandez.

9               MR. HERNANDEZ:  Your Honor, I mean --

10              THE COURT:  I sort of forced this issue based on

11   information that we received from the Probation Office, some

12   very compelling information that goes to the heart of risk

13   of flight.  You can request a continuance to find out more

14   information, but now could be the time to proceed, I think.

15   Go ahead.

16              MR. HERNANDEZ:  Your Honor, none of what the

17   Government said makes him a risk of flight, Your Honor.  We

18   don't know why -- it is not illegal to travel, and we don't

19   know why Mr. Rolle was traveling.  Maybe he is traveling

20   because it's on his bucket list because he has ████, and

21   he is realizing his days are limited.  That should not be a

22   reason to deny him bail.

23              In terms of the real risk of flight, there are

24   mechanisms to impede him from traveling outside of the

25   United States; taking away his passport, putting an ankle

1     bracelet, home arrest, third-party custodian.  The fact that

2     he travels without any evidence of why he is traveling, from

3     the Government, is just -- isn't enough to deny bail.

4             In terms of his medical conditions, Your Honor, I

5     mean, the Government hasn't presented any evidence that he

6     doesn't have these conditions, Your Honor.  We see that he

7     is in a wheelchair.  You know, we know he's taking pills.

8     The Government concedes that point.  He is taking pills

9     because of some condition he has.  He does have a ███████

10    ████████████    The Government said nothing about his

11    ████████████   conditions and the other pills he is taking,

12    Your Honor.

13            So we can't dismiss -- we can't accept the

14    Government's dismissal of his medical conditions just

15    because he hasn't presented any evidence, Your Honor.  We

16    should take it at face value at this stage at least, Your

17    Honor.  It doesn't seem he is a risk of flight, and it seems

18    that what he is saying about his health has some credence to

19    it.

20            So when we look at the reasons for bail, Your

21    Honor, is he a risk of flight?  Is he a danger to the

22    community?

23            THE COURT:  No, we are not disagreeing.

24            MR. HERNANDEZ:  He is not a danger.

25            THE COURT:  That's not available for argument

1    here.  It's only risk of flight.

2              MR. HERNANDEZ:  The risk of flight, Your Honor,

3    there are conditions that will satisfy the Government's

4    worries.  If he has multiple passports, take them away.  If

5    he has a Bahamian passport, and that's the only one he has,

6    take that away.  Home incarceration at his home in New York

7    with electronic monitoring, Your Honor.  He told me he lives

8    in Midtown.  He lives in a high-rise.  Going up and down the

9    stairs would be difficult.  He is in a wheelchair.  He needs

10   the wheelchair for mobility.  The reason he is in a

11   wheelchair is because of his ███████condition.  It's

12   difficult for him to walk.

13             If he attempts to move, to go to the airport, he

14   will be noticed because of his condition, because of the

15   wheelchair, Your Honor.  So I think the risk of flight

16   argument isn't enough from the Government, Your Honor.  I

17   think there are conditions right now to at least let him be

18   released under certain conditions.  He informed me that if

19   he is released and allowed to go to New York, he does have

20   the means to come back for the Rule 5 hearing, or the means

21   for an electronic monitoring system at his home.

22             THE COURT:  Okay.  Well, that wouldn't make very

23   much sense for him to be released here, go to New York, come

24   back to the Rule 5 hearing to decide whether we send him

25   back to New York.  I mean, if he were to go to New York, he

1     would stay in New York because that's where the charge is.

2            Frankly, Ms. Montanez, I don't think I need to

3     hear much more.  What I have heard so far, what I have seen

4     is -- I can dare say I can find a more obvious case of

5     substantial risk of flight than the circumstances that I

6     have seen right here.

7            MS. MONTANEZ:  Your Honor, if I may.  I just

8     received additional information that I think is important

9     for the Court to know.

10           THE COURT:  Be my guest.

11           MS. MONTANEZ:  I just received confirmation from

12    the immigration service that the defendant filed a green

13    card application, and that application asks that he list any

14    children he might have around the world, and he did not list

15    any children.  So our position in this case is not only that

16    he is a risk of flight based on his access, but that he has

17    a pattern of providing false information to officials, and

18    that is why we cannot rely on the information he is

19    providing now to the probation officer or to the Court in

20    order to determine that he is not a risk of flight because

21    this is exactly what he's been doing since 2015.

22           And he claims now that he was in a wheelchair, but

23    on September 7, 2019, as per the complaint filed in the

24    case, there is a video recording of a person that appears to

25    be Rolle exiting from the Best Buy.  And the reason that

1    information is included in the complaint is because one of

2    the credit cards associated to this whole pattern made

3    purchases at that establishment.

4            So he might be in a wheelchair today, but we are

5    really concerned that he might not be providing concrete,

6    correct information that this Court can honestly rely on to

7    believe that he is not going to disappear as soon as he has

8    access to a plane and abandon the United States, Your Honor.

9            THE COURT:  Okay.  Mr. Rolle, I don't want to hear

10   from you personally, but if you would like to speak with

11   Mr. Hernandez, he can call you -- well, we can put you back

12   into the breakout room so you can speak with him, all right.

13   Would you like to do that?

14           All right.  Go ahead, Lotty; put them in a

15   breakout room, please.

16              (WHEREUPON, there was a conference between the

17              Defendant and Counsel.)

18           MS. MONTANEZ:  Your Honor, I apologize, but it

19   seems there is another lie the defendant has provided to the

20   Court, or to the Government.  I just received information

21   that at the time of his arrest, the defendant said that his

22   alleged kids that he had not mentioned in any green card

23   application were in Miami.  So the kids are in Miami or the

24   kids are in New York.  The mom says he is a legal permanent

25   resident, which he is not.

1          There is no other way to put this than this

2     defendant has been providing false information to the Court

3     in an attempt to move the Court to release him, and those

4     factors go precisely to the fact that he is a risk of

5     flight; that there are no conditions that the Court can

6     impose that he will abide by, and that if he gets a -- for

7     example, an electronic monitoring device, he will cut it and

8     flee the jurisdiction.

9          THE COURT:  Okay.

10          MR. HERNANDEZ:  Your Honor, just for the record,

11     much of the information the Government has said, if not all,

12     is in the complaint.  It's what they have that we don't have

13     access to yet which my client says much of it is inaccurate

14     or incorrect.  This information that keeps coming in, I

15     would like disclosure of those messages she's been receiving

16     regarding these issues because it keeps rolling in

17     conveniently, you know, during the hearing, and I would like

18     access to that information, Your Honor.

19          THE COURT:  I can't say that I can give you access

20     to that.  I mean, that could be communications between

21     attorneys.  So, I mean, your request for that is denied.

22          MR. HERNANDEZ:  If it's evidence they are using

23     against my client, Your Honor, we have a right --

24          THE COURT:  It's not.  Those communications are

25     not evidence.  Those are communications between attorneys.

1   It's work product.  And what Ms. Montanez decides to

2   represent to the Court is what is public.  But wherever that

3   comes from is not necessarily evidence.

4          MS. MONTANEZ:  To clarify, Your Honor, I have been

5   in communication with the Assistant United States Attorneys

6   in the Southern District of New York.

7          THE COURT:  I suspected that is the case.

8          But Mr. Hernandez, after having spoken with

9   Mr. Rolle, is there anything additional you want to say

10   before I issue my ruling?

11          MR. HERNANDEZ:  Your Honor, we just want to

12   reemphasize, Your Honor, that there are conditions of

13   release.

14          THE COURT:  Other than what you said.  If you just

15   want to reemphasize what you have already argued, I have

16   what you argued.

17          MR. HERNANDEZ:  So basically, Your Honor, this is

18   a person who can be released under conditions; 24-hour

19   electronic monitoring in his home.  That should satisfy any

20   risk of flight.

21          THE COURT:  Okay.  Well, let me just state for the

22   record that I am seeing Mr. Rolle on the screen, and he has,

23   perhaps, one of the most pleasant demeanors I have seen of

24   anybody who's come before me, and I have a feeling that if

25   he wanted to convince somebody of something that perhaps

1    wasn't true, he might easily be able to do that.

2            And Mr. Rolle, I am saying this as a compliment to

3    you.  You have a very nice demeanor, and your responses to

4    me were very good.  However, unfortunately, as I said

5    before, based on the proffer of the Government, I can dare

6    say that I have seen a more perfect case that demonstrates

7    substantial risk of flight than this one.

8            Mr. Hernandez, you said that -- you suggested that

9    the Court simply take away his passports, and if he's got a

10   passport from Great Britain, he's got a passport from

11   Ecuador or he's got a passport from -- a British passport,

12   just take those away, but the mere fact that he has those

13   documents is evidence of substantial risk of flight.

14           I can't just rest assured that we have taken away

15   all of his five illegal and fraudulent passports for

16   different countries because I don't know whether he's going

17   to have one in his back pocket.  And the reason that I can't

18   trust that he doesn't have one in his back pocket is

19   precisely because the information that he has provided

20   already to the probation office has been filled with nothing

21   but holes.  He represented to them that he was a U.S.

22   citizen.  He is not.  He is not even a lawful permanent

23   resident.

24           And it's not that the United States is, I guess

25   the official term would be poo-pooing his medical

1    conditions, but they are saying that based upon the

2    inconsistent information provided, there is some reason to

3    be skeptical of his medical conditions.

4          Now, to make a long story short -- and I am sort

5    of going to the end -- I am not going to grant him

6    conditions.  I am going to detain him.

7          Now, Mr. Hernandez, if in the meantime -- well,

8    you know, the truth is that he is going to be sent back.

9    Assuming the identity and removal hearing proceed as they

10   typically do, he will be sent up to New York.  Now, if there

11   is information that is developed by you or your colleague

12   who represents him in New York that proves that he has, in

13   fact, ████████████████████ and that he suffers from

14   ████████████████, and he is suffering through

15   ████████████, and all those things prove to be a reality,

16   then perhaps an argument can be made, though I am not

17   anticipating anything, that there are new conditions or the

18   conditions have changed and for whatever reason the Court

19   should reevaluate the detention order.

20         But right now, given the facts that we all know

21   today, and based on the information that your client himself

22   has provided, I too am skeptical of his self-reported

23   medical conditions.  You know, the fact that he says -- and

24   again, it's another reason to be skeptical, the fact that he

25   appears in a wheelchair today, but a very short time ago was

1    not in a wheelchair gives the Court pause.

2            I know very few people who travel as frequently

3    and to as many different and exotic places as Mr. Rolle, and

4    I don't think that he would have succeeded in traveling to

5    all of those places if he were, in fact, in a wheelchair.

6    So given the extensive worldwide travel that Mr. Rolle has

7    engaged in -- of course, that in and of itself, there is

8    nothing illegal about it, but it certainly does send a

9    message that he presents a substantial risk of flight if he

10   were to be released.  The mere fact that he has knowledge of

11   and experience in that much international travel makes it

12   more -- makes it easier for him to accomplish that travel

13   and to flee than someone who has zero experience in

14   international travel.

15           The fact that he has been searching online for how

16   to obtain birth certificates from other countries and the

17   like is demonstrative of his mens rea in, perhaps, not only

18   committing the crimes for which he is charged in the

19   complaint, but for which he could use to flee the United

20   States if he wanted to.

21           So all in all, like I said, I can hardly think of

22   a more perfect case to demonstrate how an individual is --

23   presents a substantial risk of flight, and he will be

24   detained on those grounds.

25           Now, we have already addressed the issue of bail.

1    What is left is the identity and removal, and we need to

2    schedule that.  Now, considering the fact that he is not a

3    U.S. citizen, he is a ten-dayer, we have already scheduled

4    that for, I think it was November 12, 2020.

5              DEPUTY CLERK:  At 3:00 p.m.

6              THE COURT:  At 3:00 p.m.

7              All right.  Mr. Hernandez, you are totally and

8    completely aware of the possibility that he can waive that.

9    There is the form.  I will leave it up to you to discuss

10   that with him and see if that is something that you would be

11   interested in doing.  But if not, we will continue these

12   proceedings for November 12th, 2020, at 3:00 in the

13   afternoon, all right.

14             MS. MONTANEZ:  That's all.  The United States

15   moves to withdraw, Your Honor.

16             THE COURT:  Hold on a second.  Mr. Rolle, there is

17   nothing further here.  The Court already made its decision.

18   If you want to speak with your attorney, Mr. Hernandez, then

19   he will contact you, and you can discuss with him what the

20   next step is.  All right, Mr. Hernandez?

21             MR. HERNANDEZ:  Thank you.

22             THE COURT:  Have a nice day, everybody.

23             (PROCEEDINGS ADJOURNED AT 4:46 P.M.)

24

25

```
 1   UNITED STATES DISTRICT COURT )
                                  )  ss.
 2   OF PUERTO RICO               )

 3

 4

 5                    REPORTER'S CERTIFICATE

 6

 7

 8          I, LISA O'BRIEN, do hereby certify that the above

 9   and foregoing, consisting of the preceding 34 pages,

10   constitutes a true and accurate transcript of my

11   stenographic notes and is a true and complete transcript of

12   the proceedings to the best of my ability.

13          Dated this 13th day of January, 2021.

14

15                          ___S/Lisa O'Brien_____
                            Lisa O'Brien
16                          USDC Court Reporter
                            708-284-0021
17

18

19

20

21

22

23

24

25
```